FILED
2015 Mar-05  AM 10:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

RECEIVED

2015 MAR -2  P 12: 05

U.S. DISTRICT COURT
N.D. OF ALABAMA

The Honorable Judge Madeline Hughes Haikala

The communities of Jones Valley Estates and Huntsville Hills appreciates the attention brought to the further improve of Huntsville City Schools and the educational opportunities for all students. We request a modification to the Proposed Consent Order being brought to you on March 11, 2015.

It is our position that equitable education across the Huntsville City Schools system is an important goal worthy of attention and investment from the community, and will result in improved educational quality and educational outcomes for our children and other communities across Huntsville City Schools.

The current Proposed Consent Order shifts our middle and high school children immediately to new schools next fall. Allowing our children, currently rising 7 – 12 graders, to be grandfathered into their current school feeder patterns benefits the desegregation order and the educational system in the following ways:

1. The small number of children in Jones Valley Estates and Huntsville Hills (approximately 6-11 per grade) to be switched from Whitesburg P-8 to Huntsville Middle School and Grissom High School to Huntsville High School would be balanced with no net racial or numeric impact by allowing the demographically similar neighborhoods of Westbury and Fleming Meadows to also remain in their current schools (Huntsville Middle School and Huntsville High School). Parents and students of both neighborhoods request the ability for current students to stay in current middle and high school feeder patterns until they graduate. This would not significantly change enrollment numbers, diversity, or the availability of Majority-to-Minority transfer slots.

2. Without any impact on the racial composition or numbers of either feeder pattern, these children will maintain strong peer and teacher support networks for these tumultuous pubescent and adolescent years. Adolescents are particularly vulnerable, and stable social and academic relationships are positively correlated with good academic outcomes. The existing transitions from elementary to middle, and middle to high school, are already difficult for students. Creating a new and destabilizing transition for those students already in middle or high school, which creates no benefit to the injured party in the desegregation case, does these children a disservice. Moving with so few classmates, and possibly few friends, to a new school, these kids will lose the stable educational ecosystem that has nurtured them, creating opportunities for disengagement and reduced student performance. Students being transferred from the closing Butler High School, for example, will transfer with as many as 1/3 of their classmates under the Proposed Consent Order.

3. With continuity, strong parent volunteers will stay actively involved in their current schools and not discomposed, giving families and school volunteer organizations time to adjust and embrace change with minimal disruption to family life or volunteer support for the existing schools.

4. Keeping high school and middle school children in the current patterns maintains safe school transport by parents and teenage children. With the proposed changes, high school children driving middle school siblings to school will have a 3.5-mile drive to middle school drop off before driving 5.4 miles back to attend high school, and repeat this pattern in the afternoons. Even for a parent driving this route, neither school is far enough away for a bus route, but the two schools are more than 5 miles apart.

In any major change, such as implementing the Proposed Consent Order, success rides on the support of the community and a win-win solution. We support the spirit of the consent order, and its goals. We ask you to allow grandfathering for existing rising 7th through 12th graders into current feeder patterns to help our children continue to succeed and allow the affected families the ability to adjust to the new plans. This provision will phase out as these children progress through school, and has a well-defined end date.

Do not disrupt unnecessarily the educational experiences of these children, and allow them to finish what they started.  It create distress for the students and families, and does not create a benefit for the injured parties in the desegregation case.