Honorable Madeline Hughes Haikala
United States District Court for
The Northern District of Alabama.
Hugo L. Black United States Courthouse
1729 Fifth Ave.N.Rm.319
Birmingham Alabama 35203

From: Madison County Commissioner
       Robert ("Bob") Harrison

Subject: <u>Proposed Consent Decree.</u>
         <u>Hereford v. Huntsville Board of Education 5:63-cv-00109</u>

Dear Judge Haikala:

Over the course of the last few months, as we have proceeded through the process of reviewing the proposed consent decree, I reflect on my involvement over the course of the last forty (40) years and the ordeal of my personal attempts to ensure the implementation of a fair and equitable education and student assignment plan for all children. However, most importantly, a plan that remediates for the past inequities and vestiges of segregation, that has resulted in the inadequate and perhaps miseducation of generations of African American children.

Sometimes I wonder if the playing field will ever be made level that will create guarantees and assurances of equal education opportunity for all children. Perhaps the fallacy of this idea lies in the fact that , public education, by many is not considered a constitutional right but a privilege.

Nevertheless, the fact remains, that we as a society would all be much better off if it were an inalienable constitutional right and mandated by the constitution.

My concerns over the course of the last few months not only has been the specific nuances of the consent decree but the present and past defiance of the HCS Board and Superintendent to commit to specific and not fulfill the basic orders of the court. This has been evident in acts of simple defiance not to involve teachers, staff and administration in the process of reviewing and vetting the proposed decree. We thank you for your order-clarifying faculty, staff and administration involvement in the mediation process. ==However, it has been brought to my attention, that the stifling of interests by the threats of retaliation from the HCS has discouraged a significant number of individuals from being involved in the process.==  This type of behavior gives cause to wonder, if after any agreement has been made, what is the likelihood that any compliance with the court order can be expected by HCS and the Superintendent.
One encouraging factor that differs from past mediations and discussions, over the course of the last 30 years, regarding remediating and resolution of the desegregation order has been a noticeable absence of the vehement and hostile elements that has spurned anger and disruption of the mediation and discussion process. Which gives cause to believe that the majority of citizens are embarrassed by this antiquated lawsuit and desire a fair, equitable, and reasonable solution to move forward to a competent, proficient and diverse school system, which is my heartfelt wish and desire as well.
In an effort to address, the major areas that remain of concern to me and members of my community that I represent are as follows:

STUDENT ASSIGNMENT

The proposed plan will still leave Jemison and Lee predominantly African –American. It is my opinion that if the College Academy at Jemison is to be successful and satisfy the dual of objectives of increasing   academic achievement and diversity certain protective assurances and guarantees must be put in place. Such as, advanced placement courses in high demand areas of Math Science Engineering and computer sciences with college credits that cannot be offered or duplicated at other schools in the system.

<u>In the original court order, it reads, that to be removed from the order, "that all vestiges of segregation shall be eliminated".</u> If this is to be accomplished, this court must issue mandatory measures that would require HCS to institute diversity that mirrors the current and future ethnic makeup of this community. The historic racially biased practices of this community in all respects of economic development, community development and selective gentrification has led to the segregated and inequality of HCS and community in general. If we are to move toward Unitary Status, we must institute "failsafe student assignment plans" to insure diversity.

<u>MAJORITY TO MINORITY TRANSFERS</u>
The original M-to-M order as stipulated in Document 67, section 3B, filed September 2, 1970 should remain intact with the exception that there be no restriction when it should be made available to parents and students, and be allowed on a year round basis.

<u>COMPARABILITY OF TEACHERS</u>
HCS has violated federal Title 1 requirements by utilizing non-certified Teachers in Title 1 schools. An audit of use of Title 1 funds would show inappropriate utilization of funds for non- certified Teachers and instructional assistance personnel. Incentivized compensation should be used as an enticement for the most qualified Teachers in schools, where the greatest need exist.

EQUITABLE ACCESS TO SUPPLEMENTAL INSTRUCTIONAL PROGRAMS.

After school, programs should be offered at all Elementary and other low performing schools as determined. Students should not be transported to other than their own home school to eliminate diversions and loss of time that could be used for remedial instruction.

## FACILITIES

There is serious concern on the adequacy and comparability of Jemison to the new Grissom High School. Initially Jemison was proposed for a vocational curriculum and now a significant part of it space is proposed for an advanced placement College Academy.  Before final design and construction of both schools is completed, a critical design assessment of each one to determine functionality to meet specific instructional and curriculum objectives needs to be determine. The conduct of facility design analysis should have been performed before curriculums were determined. Since many curriculums in some schools, are still in the formulation stage while construction is proceeding, gives cause for concern.

## Discipline

The history of HCS that demonstrates negligence in the implementation of an effective scientific and evidenced based discipline program utilizing current state of the art curriculum and instruction.  The current utilization of a private institution for providing alternative education in my opinion in a dismal failure. Recent Visits to the Pinnacle facility it has been discovered that inadequate curriculum and instructional opportunities exists for alternative education students. The services provided at pinnacle are inferior to at the former Seldon center. Currently, simple warehousing of children, with little instruction and

interaction is taking place.  An investigation of the private facility will surely reveal significant irregularities in alternative education is being provided which only further cripples the attendees and offers no opportunities for remediation.

TRANSPORTATION
HCS request for unitary status in transportation should be vehemently denied. In my opinion in order for HCS to fulfill, the terms, conditions, and services required to the disenfranchised minority students it would be impractical, if not impossible to facilitate special services that would be required w/o mandatory transportation being offered.

DESEGREGATION ADVISORY COMMITTEE
It has been my contention that w/o having full and open transparency and constant monitoring of HCS f by the community and the court, it gives me little confidence that this system will fulfill the terms and conditions of the consent decree. This committee should have representatives that are not only members from parents and school related persons but also civic leaders and other stakeholders vested in the HCS.