11 March 2015

The Honorable Madeline Hughes Haikala
United States District Court
Hugo L. Black U.S. Courthouse
1729 Fifth Avenue North
Birmingham, AL 35203

FILED
2015 MAR 13  A 11: 01
U.S. DISTRICT COURT
N.D. OF ALABAMA

Dear Judge Haikala:

I appreciate the efforts to chart a course towards Unitary Status and ensure equality in educational opportunities in Huntsville City Schools. I am grateful for the opportunity to share with you my thoughts as a parent and citizen and to express my overall agreement with the direction of the Proposed Consent Order (PCO).

Our family has been following closely the many conversations around the PCO, and listened with interest to the hearing you held today. We were impressed by Dr. Peterkin's presentation on discipline, and we are hopeful that our school system can live up to its promise and provide equitable educational opportunities to all in our city. The PCO has many elements that we believe will accelerate the improvements being made by the Huntsville City Schools to raise the level of all our schools, and will make course corrections where we have missed the mark. I believe it will benefit most especially those underperforming schools that have become more racially identifiable over several decades. All children deserve a quality education, and to have their educational needs met, and I am glad we are addressing this directly and with a sense of urgency.

There is one area of concern that I would like to share with you, in the hopes that you will redress a wrong and help protect our children from unnecessary disruption that does not forward the goals of equity or diversity included in the Proposed Consent Order as it was presented today, March 11, 2015.

**My request**
I believe firmly in equal rights, and equitable education, and that the elements of the Proposed Consent Order are headed in the right direction toward that goal. The rezoning, has, however, has been constructed without a grandfather clause for middle and high school children to continue their current educational pathway through graduation. In particular, our neighborhood stands alone in switching to Huntsville Middle and Huntsville High, with only 7-14 children per grade moving schools. All other neighborhoods being rezoned will move with dozens of their classmates to a new school, as shown in the demographer's report you requested on grandfathering high school students.

For our rising 7th grader, there are only 6 of her middle-school classmates who would be rezoned to a new middle school. These same 6 children moved from elementary school to middle school last year, and made the hard transition with such a small group into the large Whitesburg P-8 middle school. They have made new friends, joined clubs, team, classes and activities. They have made the transition. My own daughter was very concerned about

the move, and we successfully sold her on Whitesburg, the Green Power Team, the cyber-security program at Grissom, the band (she's bound to be an engineer), and she threw herself into Whitesburg and joined the math team, the band, and is on the list for Green Power Team (for 7th & 8th grades) next year with the encouragement of her math teacher (the Team coach).

She made a best friend, and joined the advanced 7th grade math class. She declared after two months that she was "glad I didn't go to Huntsville Middle. I'm away from [girl who bullied her in elementary school] and have made better friends." She is happy and thriving and making straight As.

Asking these 6 kids to make a similar transition again, just one year later, to a new school, is educationally, emotionally and psychologically disruptive at a delicate time in their development. We know from extensive research that instability, such as changing schools and leaving peer groups, puts middle and high school age children at risk for poor educational outcomes (See References). They are going through massive physical, mental, emotional and social changes, and kids who have a stable base weather this storm much more effectively than those who do not have a stable positive peer group, or feel like they belong. It has impact on their long-term ability to self-actualize and develop a healthy sense of self and become life-long learners. Puberty has begun, and for the girls, the difficult relationship-navigation that is middle school is in full swing. It is a challenging time, with hormonal, psychological and social changes threatening any child's well-being. We already put children through multiple changes when they shift from elementary to middle, and then middle to high school. Why create an additional burden on these children?

For my youngest child, a rising 7th grader, the proposed consent order creates a serious burden and disruption to her education and developmental path. Please provide a grandfather clause that allows these children to complete their educational path and provide educational continuity that is shown to create successful educational and life outcomes. This has been done many times in our district under the desegregation order, and is typically a one-time declaration, and would not apply to new children entering the district or zone.

This grandfather clause would give children and families time to adjust to new patterns, and reaches the long-term goals of the desegregation order. The number of children included would be smaller each year, and in 5 years, there would be no one grandfathered into the current pattern, everyone would follow the new zoning. This clause would have an expiration date and provide for a phased approach, like many other aspects of the Proposed Consent Order.

These children did not create the issues you are trying to rectify. Please do not ask them to suffer unnecessarily to remedy them. Their pain does nothing to improve the outcomes for others and only puts them at greater risk.

When our rising 7th grader entered Whitesburg, we asked HCS administration if the rezoning would force her to change schools, because we would rather make the switch

right then before entering middle school, or not at all. We were assured that the zoning changes would not impact her ability to stay at Whitesburg, as there would be a grandfather clause to allow her to finish her education in the current stream through high school. We were relieved, made the family commitment to Whitesburg, and settled in to helping her stay engaged. She is thriving in her new environment and has built a loyalty to her school, her friends, and her path.

Under the Proposed Consent Order as it stands, she will be wrenched from that environment and forced to make that adjustment again, only one year later. She will be back in school with the bully from elementary school. She will not be on Green Power Team, because it only exists at Whitesburg, not Huntsville Middle. It is unclear that the Huntsville Middle Band needs another percussionist, so she may be out of a place there as well.

The first our family heard that a grandfather clause was not being included in the Proposed Consent Order, was when the clarification was released on the website early in February. In every rezoning we remember, a grandfather provision has been included. We were assured not 7 months earlier that this would be the case again. We were not aware it was at issue in the mediation, as no one was allowed to speak with the public. It was not explicitly called out one way or the other in the PCO, until people started asking questions. It feels that this was deliberately held from us and has left us little time to express our concerns about this, and only at this very late date.

Our family supports the goals of unitary status and equality in education in Huntsville City Schools. We only ask that you rule to allow grandfathering existing rising 7th through 12th graders into current feeder patterns to help our children continue to succeed and allow the affected families the ability to adjust to the new plans.

I appreciate your focused attention on the needs of the children, and ask that you keep their needs first and foremost as you make your ruling.

Best regards,

*[signature]*

Laura Huckabee-Jennings

**References:**
1. "Perceptions of the School Psychological Environment and Early Adolescents' Psychological and Behavioral Functioning in School: The Mediating Role of Goals and Belonging", Roeser, Midgely & Urdan, <u>Journal of Educational Psychology</u>, 1996, Vol. 88, No. 3, 408-422.
2. "Self-Efficacy Beliefs of Adolescents", by Dale H. Schunk and Judith L. Meece, pp71–96 Copyright © 2005 by Information Age Publishing. "Periods of transition in schooling can cause changes in self-efficacy (Schunk & Pajares, 2002). p. 88