Honorable Madeline Hughes Haikala
United States District Court for
The Northern District of Alabama.
Hugo L. Black United States Courthouse
1729 Fifth Ave.N.Rm.319
Birmingham Alabama 35203

Date June 28th, 2016

From: Madison County Commissioner
       Robert ("Bob") Harrison

Subject: <u>Proposed Consent Decree.</u>
         <u>Hereford v. Huntsville Board of Education 5:63-cv-00109</u>


Dear Judge Haikala:

We are writing to you because of a recent Al.com news article regarding a letter that was sent to you recently from Mayor Tommy Battle of Huntsville. From our understanding, the intent of the letter was to ask for your intervention in the DOJ's position that prevents student arrest in schools by school resource officers (SROS). There has been much consternation and deliberation given to the matter of Police in schools over the last 25 + years. It was not until the late 1990's when the question of "gang activity" in schools became a national concern, that it became a major concern of many North Huntsville parents, when Huntsville City Police received a federal "Anti-Gang" grant to address alleged disciplinary problems. It was believed that the basis for the grant was an exaggeration of the discipline problems in Huntsville City Schools (HCS). It is the opinion of many that this initiative, by then,

Superintendent Mary Jane Caylor , in fact, exacerbated the discipline problems rather than remedying them. History will reflect that the 1990's national initiative for incorporation of police in the school environment is and was problematic, in particular for African American students.

The performance of several studies and initiatives were developed to address the achievement gap and its relevance and direct cause and effect to associated discipline problems. The first significant study was performed by the National Curriculum Audit group in 1988. This study identified and documented the internal practices of school arrests as it relates to the disproportionate suspension and expulsion of Black students versus White and the resulting  negative impact and effect on achievement and successful academic experience. This study was a predictor of the subsequent DOJ findings and validated the trends of both of National and Local data as described below. The problem of unfair arrests by school police resulting in suspensions and expulsions is further addressed in the 1998 HCS strategic plan. This plan was created as a unified HCS, Business and Community effort to rectify the inequities regarding suspensions and expulsions, as well as the disparaging gap in academic achievement. Unfortunately, the initiative failed with changes in superintendents and school board Members.

The following National and Local Data is extracted from the recently developed "Secondary Behavioral Learning Guide" Developed by HCS. The public has not been privy to this document. Even though the Desegregation Advisory Committee (DAC) supposedly reviewed this document before it is submittal to the DOJ. It is particularly disturbing that the Mayor finds opposition to the New Discipline Plan before it has been made public and the DOJ' acceptance of the plan. The local community is at a distinct disadvantage, in having insight or input to the consent decree implementation plan with no local intervener of class representative. The Mayor's proposal to allow the continuation of

police arrests in schools is repressive and violates the attempts to remediate the past and correct inequities that are fundamental to implementing the Consent Order and its intent. Furthermore, the Mayor's request is preemptive because this newly creative discipline plan is not scheduled for implementation until the school year 2016-2017. The following is a direct extraction from the New Secondary Discipline Guide, which delineates the basis for changing previous HCS practices that are discriminatory:

## National and Local Data

National research on school discipline reveal disturbing findings concerning more traditional approaches to school discipline:
• African-American students were disproportionately likely to be removed from the classroom for disciplinary reasons;
• Students with particular educational disabilities were disproportionately likely to be removed from the classroom for disciplinary reasons; and
• *Students who were suspended and/or expelled, particularly those who were repeatedly disciplined, were more likely to be held back a grade or to drop out than were students not involved in the disciplinary system.*
HCS' discipline and academic data reflects the same disparities found nationally. Consider the following examples from page 7 of the Court's April 21, 2015 Memorandum Opinion in the matter of *Hereford and the United States v. the Huntsville City Board of Education*:
• During the 2013-14 school year, African-American students tended to receive, on average, more serious consequences for similar behaviors to white students.
• During the same school year, African-American students were two times more likely to receive out-of-school suspension for similar behavior relative to white students who tended to receive a consequence such as in-school suspension, detention, or letter home.
We are not satisfied with the above statistics, and we know that we can improve. In addition to the local and national statistics listed above, there are other important instructional reasons for making changes to the discipline process, such as increasing instructional time for all students. Therefore, this document provides a comprehensive approach to supporting student behavior. It is focused on: keeping all students engaged in learning; reducing disparities in disciplinary consequences and academic performance; and increasing the amount of instruction time for *all* students.

## Importance of Data

In the past, schools collected student disciplinary data, but the method for collecting data made it difficult to track the Disciplinary Consequences for behavior and Interventions provided to a misbehaving student. In order to support school personnel with the implementation of Positive Behavior Interventions and Supports ("PBIS"), HCS administration is currently developing a user-friendly computer application (the "Discipline Reporting App" or "DRA") for school personnel to use for the collection of data about student behavior. The DRA is expected to be ready for District-wide implementation by the start of the 2017-18 school year.
The Discipline Reporting App will serve as a tool for helping teachers and principals track the record of Interventions provided to each student. By tracking teacher and administrator Response Strategies, Disciplinary Consequences, and Interventions, the DRA will track which

actions are effective in shaping each child's behavior, and this data will help school-level personnel respond to a student's behavioral needs throughout the student's entire educational career. For example, once implemented, school personnel will use the DRA to collect student behavior data including the Interventions that proved most effective for helping a given student. Information about a student's identified needs and successful Interventions will be made available to the student's next teacher(s), so the new teacher(s) may continue these Interventions for the student as needed. To ensure that each student has a clean slate for each school year, the school-based Problem Solving Teams will ensure that only the information necessary to support any student is shared with the student's new teachers.

One of the fundamental reasons for the development of the Behavioral Learning Guides is the need for fair, consistently-applied consequences and supports for students. To ensure this consistency, the District will randomly sample the disciplinary data collected at each District school, using both the DRA and other District-developed forms. The District will address any disparities that are presented by this random sampling.

We believe that this new Secondary Behavioral Learning Guide is a stark and creative alternative to current and past discipline procedures and methodologies utilized by HCS. This new Plan may not be the perfect solution to correct past disparities but certainly is a step in a positive direction for a civil approach to rectify a problem of mutual concern.

We, implore the court to allow the implementation of the HCS plan and reassess the role of SROS's possibly to a role of indirect school support and supplemental truancy assistance and external threats to school security. We again appreciate the Courts' reception and sensitivity to the entire community's concerns.

Respectfully;
Commissioner Bob Harrison.
Madison County Alabama.
District 6