UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **SONNIE WELLINGTON HEREFORD, IV, et al.,** | } } } | |
| Plaintiffs, | } } } | |
| and | } } | Case No.: 5:63-cv-00109-MHH |
| **UNITED STATES,** | } } } | |
| Plaintiff-Intervenor, | } } } | |
| v. | } } | |
| **HUNTSVILLE BOARD OF EDUCATION, et al.,** | } } } | |
| Defendants. | } | |

**ORDER**

The Huntsville Board of Education has submitted two motions for the Court's consideration. In the first, the Board has asked the Court to terminate federal supervision of the school district in the area of faculty and staff. (Doc. 758).[1] In the second, the Board seeks approval of proposed facility additions for two schools in

---

[1] *See Green v. County School Bd. of New Kent Cnty., Va.*, 391 U.S.430 (1968) (providing a non-exhaustive list of areas that in which segregated school systems were racially identifiable: "the composition of student bodies . . . faculty, staff, transportation, extracurricular activities and facilities").

1

the district. (Doc. 769). In the second motion, the Board has indicated that it anticipates seeking release from federal court supervision in the area of facilities before the end of the 2023-2024 school year. (Doc. 769, p. 18).

Given these companion motions, for the sake of the efficient use of the parties' resources and to avoid successive hearings and the expense associated with them, the Court cancels the September 19, 2023 hearing in this matter, makes the following findings, and instructs the parties to proceed as follows:

1. On the record before it, the Court finds that since it entered the 2015 Consent Order in this case, the Board has met court-imposed deadlines and has filed the data and reports mandated in the Consent Order. The United States has reported that the Board has adequately responded to the United States' requests for additional information and has allowed the United States access to all requested records. The parties have worked together expeditiously and in good faith to address issues that have arisen under the Consent Order.

2. On the record before it, the Court finds that, since the entry of the Consent Order, the Board has meaningfully increased the number of Black certified administrators in its central office. In its most recent annual report, the Board stated that 44% of all certified administrators in the central office (12 of 27) are Black. The report reflects a nearly 50% increase in the

number of certified administrators in the central office who are Black since the Board filed its first report under the Consent Order. (*Compare* Doc. 744-5, p. 8, *and* Doc. 461-7, p. 2). Similarly, shortly after the Court entered the Consent Order, the Board reported that there were 13 Black principals in the school district. (Doc. 461-8, p. 2). Most recently, the Board reported that 50% of the school principals in the district are Black. (Doc. 744-5, p. 10). Based on its review, the United States has found that, since 2015, the Board's data shows that the Board has selected Black and White assistant principal candidates for interviews at similar rates, and the rates at which candidates in the two groups are hired suggests no systemic racial discrimination in the assistant principal hiring process. (Doc. 763).

3. On the record before it, the Court finds that the racial composition of the Board's team of teachers has been relatively stable from 2015 to the present. The percentage of Black teachers in the district has hovered around 30%. (Doc. 763, p. 7). The United States' data review indicates that the Board has not systemically discriminated against Black applicants on the basis of race in teacher hiring. (Doc. 763).

4. In support of its motion for release from supervision in the area of faculty and staff, the Board has submitted declarations on which the Board relies to establish its good-faith commitment to avoiding future *de jure*

segregation and to fulfilling the goals and purpose of the Consent Order in the area of faculty and staff. (*See*, *e.g.*, Doc. 759-1).

5. On this record, the Court suspends the Board's reporting obligations as to faculty and staff found in Section V.D. of the Consent Order. (Doc. 450, pp. 65-67).[2] The Board's efforts to date in the area of faculty and staff and its commitment to avoid a reversion to prior *de jure* practices warrants a relaxing of supervision in this area until the Court releases the Board from federal supervision of faculty and staff.

6. The parties shall meet and confer about the status of the Board's implementation of the Consent Order and consider which *Green* factors the Board may have satisfied, or may be near satisfying, and provide the Court with a written status report by February 1, 2024.

7. If the Board anticipates a motion or motions concerning *Green* factors other than faculty and staff during the 2023-24 academic year, then the Board should be prepared to file any additional *Green* factor motions no later than March 30, 2024 so that the Court may schedule a hearing on all pending *Green* factor motions before the end of the 2023-24 academic year.

---

[2] The Board shall retain the records necessary to produce the reports found in Section V.D. of the Consent Order to ensure that the Court and the United States can, if necessary, access and consider updated data in any later proceeding in this matter.

8. On the record before it, the Court grants the Board's unopposed Motion for Approval of Proposed Facility Additions to Hampton Cove Middle School and Goldsmith-Schiffman Elementary School. (Doc. 769). The Court understands that the Board has dedicated funding to many other improvements in facilities throughout the district. (Doc. 769).

With respect to its evaluation of motions for relief from supervision under various *Green* factors, the Court notes that in *Freeman v. Pitts*, the United States Supreme Court stated that a district court must exercise its discretion to determine whether to "order an incremental or partial withdrawal of its supervision and control." *Freeman v. Pitts*, 503 U.S. 467, 489 (1992). The Supreme Court cautioned that, before granting a motion for partial withdrawal of court supervision, a district court should consider whether retention of supervision in one area is necessary to ensure compliance with other facets of a consent order. *Freeman*, 503 U.S. at 491. Thus, in resolving a motion for release from supervision in one area, a district court must consider the extent to which two or more areas may overlap. In making this evaluation in this case, the Court will clearly indicate to the parties when it is releasing the Board from supervision in an area, when it is retaining supervision for the limited purpose of ensuring compliance with overlapping areas, and when it is

retaining supervision because it finds that the Board has not yet satisfied its obligations in an area under the Consent Order.

The Court's order today recognizes the Board's good faith effort to fulfill its obligations under the Consent order in the area of faculty and staff, the United States' diligent effort to review and evaluate the Board's compliance, and the parties' joint effort to address and resolve all questions that have arisen under the Consent Order with respect to faculty and staff. The Court thanks the parties for their hard work to date and for their effort to prepare their upcoming status report.

**DONE** and **ORDERED** this September 15, 2023.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE